## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **BRIAN SHRIMPTON, et al.,** | ) | **CASE NO. 1:10CV513** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **QUEST DIAGNOSTICS INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J.**:

        This matter comes before the Court upon Defendant's and Plaintiff's Objections ( Doc.

No 31; Doc No. 32 ) to the Report and Recommendation of the Magistrate Judge ( Doc. No. 29 ),

recommending that both parties' Motions for Summary Judgement be denied.  For the following

reasons, the Court ADOPTS the Magistrate Judge's Report and Recommendation in full.

### I. PROCEDURAL HISTORY

        On July 15, 2010, Plaintiff Brian Shrimpton ("Plaintiff") filed an Amended Complaint on

behalf of himself and his spouse, Patricia Shrimpton ("Patricia"), against his former employer,

Quest Diagnostics Incorporated ("Defendant"), alleging that Defendant had violated the

Consolidated Omnibus Budget Reconciliation Act ("COBRA") 29 U.S.C. § 1161, when it failed

to timely notify Patricia of her right to continue health benefits under Defendant's group

health plan after Plaintiff was terminated from employment.  ( Doc. No. 18  ).

        Defendant filed a Motion for Summary Judgment, arguing that it was under no obligation

1

to provide notice to Patricia because Plaintiff had been terminated for "gross misconduct," a statutory exception to the requirements of COBRA.  ( Doc. No. 24, at 4-7 ); See 29 U.S.C.A. § 1163(2)(2011)).

Plaintiff subsequently filed a Motion for Summary Judgment, along with a Brief in Opposition to Defendant's Motion for Summary Judgment.  ( Doc. No. 25; Doc No. 26 ).  In his Motion for Summary Judgment, Plaintiff argued that Defendant had waived its gross misconduct defense by acting in a manner that suggested it intended to provide COBRA benefits to Patricia.  ( Doc. No. 25 at 6-7 ). [1]  This waiver argument was raised again in Plaintiff's Brief in Opposition, where Plaintiff also argued that because his actions did not constitute gross misconduct under COBRA, Patricia was entitled to notice and Defendant was obligated to provide such notice.  ( Doc. No. 26, at 3-5 ).

In response, Defendant filed a combined Brief in Opposition to Plaintiff's Motion for Summary Judgment and Reply Brief in Support of its Motion for Summary Judgment.  ( Doc. No.27 ).  Shortly afterwards, Plaintiff filed a Reply in Support of his Motion for Summary Judgment.  ( Doc. No. 28 ).  On January 24, 2011, the Magistrate Judge issued her Report and Recommendation, recommending that both parties' Motions for Summary Judgment be denied. ( Doc. No. 29 ).  Both parties filed Objections to the Magistrate Judge's Report and Recommendation.  ( Doc. No 31; Doc No. 32 ).

## II. FACTUAL BACKGROUND

---

[1] Plaintiff also raised the argument that Patricia Shrimpton was a "Qualified Beneficiary" under COBRA. However, this assertion was neither disputed by Defendant, nor raised in either parties' Briefs in Opposition; therefore, it is not addressed .

Defendant terminated Plaintiff from employment on August 1, 2009 after learning that he had been convicted of two counts of Pandering Sexual Material Involving a Minor and one count of Possession of Criminal Tools, both felonies in Ohio ( Doc. No. 29, at 3 ).  As a result of these convictions, Plaintiff was sentenced to five years in prison and categorized as a Tier II Sex Offender.  Id.

While employed by Defendant, Plaintiff and his spouse enjoyed health benefits under Defendant's group health plan, which Defendant administered.  Id.  Plaintiff alleges that at the time of his termination, a human resources manager advised him that he and Patricia would receive COBRA paperwork in the mail, however, he and Patricia never learned that their benefits had in fact been cancelled until Patricia subsequently attempted to fill a prescription.  Id. at 4.  Plaintiff states that as a result of these acts and omissions, Patricia incurred uncovered medical expenses.  Id.

Defendant argues that because Plaintiff was terminated for gross misconduct, it was under no obligation under COBRA to provide coverage or notice to Patricia.  However, Defendant concedes that it did not explain to Patricia that "gross misconduct" was the basis of Plaintiffs termination until this litigation was initiated.  Id.; ( Doc. No. 27, at 8 ).

On October 31, 2009, Plaintiff's counsel sent a letter to Defendant alleging that it had violated COBRA by failing to send Patricia notice that she could continue her coverage under Defendant's group health plan as Plaintiff's beneficiary.  ( Doc. No. 29, at 4 ).  Defendant responded by promptly sending Patricia notice that she could continue coverage under its health plan, along with the necessary forms needed to enroll.  Id.  On December 9, 2009, Patricia submitted a premium payment to Defendant and became covered under its group health plan.  Id.

3

Defendant now contends, however, that the COBRA paperwork was sent in error and that the employees who sent the forms were unfamiliar with the circumstances of Plaintiff's termination. ( Doc. No. 27, at 7-8 ).

## III. LAW AND ANALYSIS

### Civil Rule 72(b) Standard

Under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636, the District Court is required to review *de novo* any portion of the Magistrate Judge's Report to which a specific objection is made.  A party who fails to file an objection waives the right to appeal. *U.S.. v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).  The District Court need only review the Magistrate Judge's factual or legal conclusions that are specifically objected to by either party.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Local Rule 72.3(b) recites in pertinent part:

The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge.  The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record.  The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

### Civil Rule 56 Standard

A summary judgment shall be granted only if  "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  The burden is on the moving party to conclusively show no genuine issue

4

of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F. 3d 1339, 1347 (6th Cir. 1994).  The moving party must do so by either pointing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or by "showing that the materials cited ( by the adverse party ) do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." See Fed. R. Civ. P. 56(c)(I)(a), (b).  A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hospital Ass 'n.*, 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Bias v. Advantage*, 905 F.2d 1558, 1563 ( C.A.D.C., 1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors*

5

*Benefits Ass 'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Defendant's Objections to the Magistrate Judge's Report and Recommendation**

**a. The Plaintiff's Identity.**

 Defendant's first objection to the Magistrate Judge's Report and Recommendation is that the Magistrate Judge refers to Brian Shrimpton as the Plaintiff, rather than his spouse, Patricia Shrimpton ( <u>Doc. No. 32, at 3-4</u> ). Defendant complains that as a result, the Magistrate Judge's impression of the facts was "colored," and that some of her questions were "factually mistaken." [2] However, Defendant never explains what it means by this. While conceding that the suggested error is "perhaps harmless," the Defendant then cites a number of questions raised by the Magistrate Judge that directly address Brian Shrimpton, such as what his role at Quest was, and whether he was notified of a right to continue COBRA benefits at the time of his termination. Defendant fails to explain how these questions, which go directly to the substance of the issues raised by the parties in their competing motions for summary judgment, were "colored" or "factually mistaken."

 Regardless of who the Plaintiff is, the Court cannot properly consider a motion for summary judgement which relies upon a particular claim or defense without considering the evidence to support it, and determining if the moving party has sufficiently proven "that there is no genuine dispute as to any material fact." <u>See</u> Fed. R. Civ. P. 56(a). The Court cannot fairly determine whether there is a genuine dispute that Brian Shrimpton was terminated for gross

---

[2] Regardless of the Defendant's claimed error, it is actually the Defendant who is in error. The docket, and all orders, reports and motions subsequent to the Plaintiff's Amended Complaint refer to the Plaintiff as " Brian Shrimpton *et al*," including the Defendant's Objections to the Magistrate Judge's Report and Recommendation.

misconduct without first asking questions about him and the circumstances surrounding his termination.  When making a ruling on a motion for summary judgment, "the court should state on the record the reasons for granting or denying the motion."  Id.  Here, the Magistrate Judge did just that.  After considering the Defendant's gross misconduct argument, she explained and found that Defendant had failed to sufficiently meet its burden for summary judgment.  As such, Defendant's objection is without merit.

**b. Gross misconduct.**

Defendant's second objection to the Magistrate Judge's Report and Recommendation is that the Magistrate Judge erred by finding that Defendant had failed to provide sufficient evidence to support its claim that Plaintiff's conduct constituted gross misconduct, and that she had improperly considered certain factors in reaching her decision.  ( Doc. No. 32  at 4-7 ).

The term "gross misconduct" is not defined within COBRA.  See 29 U.S.C.A. § 1163(2)(2011).  Likewise, the relevant case law does not clearly define the meaning of the term. *Moore v. Williams College*, 702 F.Supp.2d 19, 24 (D. Mass. 2010); *Nero v. Uni. Hosps. Mgmt. Servs. Org.*, No. 1:04-cv-1833, 2006 WL 2933957, at *4 (N.D. Ohio Oct. 12, 2006) (Aldrich, J.). Courts faced with the question of whether a given act constitutes gross misconduct have generally used a two-part test.  First, the conduct in question must be intentional, wanton, willful, deliberate, or reckless, or performed with deliberate indifference to an employer's interests. *Moore*, 702 F. Supp. 2d at 24 (citing *Zickafoose v. UB Servs ., Inc*., 23 F. Supp. 2d 652, 654, 657 (S.D. W. Va. 1998)); *Nero*, 2006 WL 2933957, at *4 (quoting *Collins v. Aggreko*, Inc., 884 F. Supp. 450, 454 (D. Utah 1995)); *Nakisa v. Continental Airlines*, 2001 WL 1250267 at * 2 ( S.D. Tex. 2001); See also *Burke v. Am. Stores Emp.Benefit Plan*, 818 F. Supp. 1131 , 1135 (N.D. Ill.

7

1993); *Adkins v. United Int'l Investigative Servs., Inc*., No. C 91-0087 BAC, 1992 U.S. Dist. LEXIS 4719, at * 11 (N.D. Cal. Mar. 27, 1992).

Second, the conduct in question must have a "substantial nexus" to the workplace. *Zickafoose*, 23 F.Supp. 2d at 654, 657.  A substantial nexus has been found to exist when the conduct in question directly involved either the employer itself, a fellow employee, or a current or former client.  *Moore*, 702 F. Supp. 2d at 22, 25 (assistant professor pleaded guilty to student aid fraud, bank fraud and Social Security fraud, and lied on his employment application about having an undergraduate degree); *Nakisa*, 2001 WL 1250267, at *3 (flight attendant made a racial remark toward a co-worker and threw an apple at her while aboard their airplane); *McKnight v. Sch. Dist. of Philadelphia*, 171 F. Supp. 2d. 446, at 447, 456 (E.D. Pa. 2001) (school teacher was charged with sexual assault against an eighteen-year-old male who was the teacher's former student); *Bryant v. Food Lion Inc*, 100 F. Supp. 2d 346, 365 (D.S.C. 2000) (employee repeatedly and persistently refused to follow his supervisor's instructions); *Zickafoose*, 23 F. Supp. 2d at 654, 657 (manager severely battered and hospitalized his co-worker while the co-worker was visiting his home); *Collins*, 884 F. Supp. at 454 (employee drank a substantial amount of alcohol at a business meeting, became intoxicated and thereafter caused a car accident while driving a company car); *Burke*, 818 F. Supp. at 1133, 1138 (employee stole store coupons from her employer and redeemed them to obtain free turkeys from her employer); *Adkins*, 1992 U.S. Dist. LEXIS 4719, at * 11-12 (security guard abandoned his post and falsified his work log to obtain payment for the time he was supposed to be on duty).

Here, Defendant agrees with the Magistrate Judge's definition of gross misconduct under COBRA, but questions her application to the facts of this case.  ( Doc. No. 32 at 5 ).

8

First, Defendant takes issue with the Magistrate Judge's discussion of whether "[Plaintiff's] misconduct was of the kind that Congress intended would disqualify him and, more importantly, his family members, from receiving notice and continuation health care coverage under COBRA." ( Doc. No. 29, at 15 ).  Specifically, Defendant argues that the Court incorrectly found that "whether an employee engaged in gross misconduct depends on how deeply affected the employee's spouse and beneficiaries would be from the denial of COBRA benefits." ( Doc. No. 32, at 5 ).  However, the Court made no such finding.

While it is true that the Magistrate Judge does discuss the burden to family members of losing COBRA benefits, the discussion is not dispositive or even a factor in the analysis.  Rather, the Magistrate Judge merely states that the standard for gross misconduct is higher than the standard suggested by Defendant.  This is illustrated by the rest of the discussion, where the Court concludes that "absent evidence of [Plaintiff's] employment activities, responsibilities and relationships, the court is unable to conclude that [his] misconduct sufficiently related to or affected his work." ( Doc. No. 29 at 16 ).

Defendant also objects because "reasonable minds cannot disagree that the effects of a co-worker who panders sexual material involving minors and is sentenced to five years in prison would extend into the employment arena." ( Doc. No. 32, at 7 ).  Defendant argues that "embarrassment to the company due to its association with [Plaintiff]...along with his lengthy prison sentence, is enough to constitute gross misconduct.  Id.  Citing *Zickafoose*, Defendant argues that, as a matter of law, knowledge by co-workers of Plaintiff's conduct could create "an uncomfortable working environment" and produce "fear and tension among co-workers."  Id.  However, *Zickafoose* involved entirely different conduct; there, the Plaintiff attacked a

9

co-worker and put her in the hospital.  *Zickafoose*, 23 F. Supp. 2d at 654.  While Zickafoose's

conduct, like Plaintiff's, occurred outside of the workplace, that is where the similarities end.  In

*Zickafoose*, there was a substantial nexus because "[Zickafoose] assaulted a coworker ...

knowledge of a vicious assault by an employee might create a uncomfortable working

environment under normal circumstances ... the discomfort undoubtedly will be heightened when

that employee is a manager or supervisor and the victim is a fellow employee."  Id. at 657.  Here,

Defendant has provided no evidence of such a relationship to the workplace.  In response to the

Magistrate Judge's Report and Recommendation, Defendant provides evidence in the form of an

affidavit from Thomas B. Schlegel, Vice President of Human Resources for Defendant' s

physician business.  ( Doc. No. 29. Ex. I ).  In the affidavit, Mr. Schlegel explains what the

Plaintiff's role within the company was and details various "corporate pledges" Plaintiff took.

Id. at 2-3.[3]   Mr. Schlegel then goes on to explain how he determined that because he "no longer

trusted [Plaintiff] to perform the functions of his former position ..." and because he "felt that

[Plaintiff's] colleagues and peers...would not want to work with him," Plaintiff's termination

qualified under the gross misconduct exception to COBRA.  Id.

 Despite this evidence, Defendant has yet to show how Plaintiff's conduct had a

substantial nexus to his employment.  Plaintiff's conduct, however terrible it may be, has not

been shown to directly involve Defendant, its clients or employees.  Instead, Defendant has only

speculated that Plaintiff's co-workers might be made uncomfortable if they had knowledge of his

---

[3] The Pledges signed by the Plaintiff include an "Integrity Commitment Pledge" and "Code of Business Ethics" pledge. However, it is not clear how either pledge extends to conduct that occurs outside the workplace or scope of employment. Defendant cites the "Integrity" pledge, and argues that the sentence " we are responsible corporate citizens in the communities we serve" evinces the scope of the pledge; however, reasonable minds could disagree about the meaning of the term  "corporate citizen," which could be interpreted as limiting the pledge to conduct that occurs within the scope of employment

conduct.  It is perhaps a stretch, and certainly a "genuine dispute of material fact," as to whether Plaintiff's conduct here bore such a substantial nexus to the workplace as the conduct that took place in *Zickafoose* .

Because Defendant has not sufficiently proven that there is no genuine dispute that Plaintiff's conduct constituted "gross misconduct" under COBRA, the Magistrate Judge's denial of Defendant's Motion for Summary Judgment is not erroneous.

**Plaintiff's Objections to the Magistrate Judge's Report and Recommendation.**

**a. Denial of Defendant's Motion for Summary Judgment.**

Plaintiff's first objection to the Magistrate Judge's Report and Recommendation argues that because the Magistrate Judge was correct to deny Defendant's Motion for Summary Judgment, she erred when she subsequently failed to grant Plaintiff's Motion for Summary Judgment ( Doc. No. 31 at 2-3 ).  This argument is without merit and suggests a misunderstanding of Fed. R. Civ. P. 56.  Plaintiff cannot mean that the Magistrate Judge failed to acknowledge his argument - that his conduct did not meet the standard of gross misconduct - because Plaintiff's Motion for Summary Judgment makes no such argument.  It is equally dubious to suggest that Fed. R. Civ. P. 56 somehow provides that where both parties file opposing motions for summary judgment, a denial of one entitles the other to automatic victory, even on an issue not raised by that party.

The purpose of Fed. R. Civ. P. 56 is to determine "whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

11

*Anderson*, 477 U.S. at 250.  Here, the Magistrate Judge merely found that Defendant had not proven that the evidence "is so one-sided that [Defendant] must prevail as a matter of law."  Id. While it is true that one may prevail on a motion for summary judgment *negatively* - that is, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact," Fed. R. Civ. P. 56 (c)(1)(B), one must do so in his or her motion for summary judgment, not in a subsequent objection to the Court's ruling.

Because Plaintiff did not make the argument that his conduct did not constitute gross misconduct as a basis for his Motion for Summary Judgment, no error was committed by the Magistrate Judge in failing to grant the motion on that basis.

**b. Wavier.**

Plaintiff's second objection to the Magistrate Judge's Report and Recommendation is that the Magistrate Judge incorrectly decided that Defendant "*did not* waive its right to assert the "gross misconduct" exception..." ( Doc. No. 31 at 3-4 )(emphasis added).  Plaintiff misreads the Magistrate's opinion.  Rather than summarily concluding that Defendant had or had not waived any rights, the Court instead found that "there is a genuine question of material fact regarding whether [Defendant] knowingly relinquished its right to assert a gross misconduct defense in this litigation." ( Doc. No. 29 at 20 ).

Nevertheless, in articulating his assignment of error, Plaintiff focuses on two points of the Magistrate Judge's report.  First, Plaintiff takes issue with the Court's analysis of *Conery v. Bath Associates*, 803 F.Supp 1388 ( N.D.Ind. 1992).  ( Doc. No. 31 at 4 ).  In *Conery*, the employee was asked to leave his employer after it was discovered that he had engaged in

12

financial impropriety.  *Conery*, 803 F.Supp at 1393.  Rather than terminate him, however, the employer elected to allow him to resign, subject to a confidential severance agreement.  Id.  The agreement made no mention of the reasons behind the resignation and released the employee from all potential claims by the employer.  Id.  Shortly after his resignation, the employer sent the employee a COBRA election form, but it was never received.  Id. at 1394.  As a consequence, the employer subsequently had the employee and his dependants dropped from their insurance plan.  Id.  Shortly afterwards, the employee's attorney sent a letter to the employer advising it that no COBRA notice had been received.  In response, the employer sent out another notice.  Upon receipt of the employee's completed form and premium payment, the employer attempted to have the employee and his dependents reinstated on their insurance plan, but was unsuccessful.  Id.  After incurring several unpaid medical bills, the employee sued the employer.  In its defense, the employer maintained that it had terminated the employee for "gross misconduct," and that it therefore was not obliged to provide coverage.  *Conery*, 803 F.Supp at 1395.  Finding for the employee, the court ruled that (1) the employee had resigned subject to a confidential severance agreement and as a result could not be said to have been terminated for gross misconduct; and  (2) the employer's actions, taken together with the severance agreement, indicated that the employer had agreed to provide coverage, thus waiving any gross misconduct defense.  Id. at 1396.

Plaintiff cites a number of facts that he contends establish that Defendant intended to waive its right to a gross misconduct defense, as the employer in *Conery* had.  Plaintiff points to: (1) Defendant's failure to state to Plaintiff at the time of his termination that he was being terminated for gross misconduct;  (2) Plaintiff was advised by Defendant's employees that he

13

would receive COBRA paperwork;  (3) Defendant's act of sending COBRA forms after

Plaintiff's spouse inquired about the lack of notice and termination of her health benefits; and (4)

Defendant's failure to indicate to Plaintiff that he had been terminated for "gross misconduct"

until after this lawsuit was initiated.

Plaintiff contends that these facts, as a matter of law, prove that Defendant waived its

right to assert a gross misconduct defense and does so squarely by relying on *Conery*.  However,

as indicated in the Magistrate Judge's Report and Recommendation, *Conery* does not

stand for the proposition that, standing alone, such facts evince waiver *per se*.  Instead, the

actions of the employer in *Conery*, *along* with the severance agreement, made it clear that the

employer there *intended* to provide benefits, thus waiving its gross misconduct defense.

( Doc. No 29 at 19 );  *Conery*, 803 F.Supp at 1395.  For Plaintiff's interpretation of *Conery* to be

cognizable, one would have to assume that Conery could have prevailed even absent such an

agreement.  However, the *Conery* decision does not support such a outcome, the Court having

found that "all of the evidence .... show that the parties *specifically agreed* that Conery would be

afforded the opportunity to exercise his rights under COBRA." Id. at 1397 (emphasis added).

Here, Plaintiff can point to nothing more than insufficient circumstantial evidence, which

Defendant claims resulted from the mistakes of its employees.  ( Doc. No. 27, at 7-8 ).

In deciding whether to grant a motion for summary judgment, the court must decide if

" ...the evidence presents a sufficient disagreement to require submission to a jury or whether it

is

so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251.  Here, it

is clear that the question of whether Defendant's actions were intended as a waiver of a known

14

right, or a mere mistake, is a question of material fact about which there is a genuine dispute.  As such, it was proper for the Magistrate Judge to deny Plaintiff's Motion for Summary Judgment.

## IV. CONCLUSION

As set forth above, both parties to this litigation have failed to prove that there is no genuine dispute as to specific issues upon which their motions for summary judgment rely, namely, whether (1) Plaintiff was terminated for gross misconduct; or (2) whether Defendant waived its gross misconduct defense.  Accordingly, the Court ADOPTS the Magistrate Judge's Report and Recommendation in full and both parties' Motions for Summary Judgment are denied.

**IT IS SO ORDERED.**

**DATE: June 30, 2011**

**S/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**

15